By the Court.—Sedgwick, J.
If all the printed parts of the policy which specify the risks insured ■against are disregarded because they in words refer to a voyage, no voyage being described in the policy, then the only risk designated by the policy is such •as is defined by the term “port risk.” I learn from Dows v. Howard Ins. Co. (5 Robertson, 481), that on the continent of Europe, usage or positive enactment has defined all the perils insured against, and there is no need of inserting them in a policy; but the judge giving the opinion said: “He had not been able to find any authority that in Great Britain and this country claims that any perils are insured against other "than those enumerated in the policy, and any necessarily or usually consequential ones.” If this be so, still it may be that when risks are not enumerated, but there is a general contract of insurance, the law has resources enough-to determine as a question of fact or ■of law what it is that the contract insures against. It Is, however, the universal custom to enumerate the *420 risks. In this case, if we have to rely on the words “port risk,” as a statement of the perils, we can not see in them the character of any peril, in the concrete. They describe nothing by which a ship may be damaged. There are sea risks, fire risks, danger from pirates, &c., in port, as there are on the high seas (Duval v. Commercial Ins. Co., 10 Johns. 278 ;. Patrick v. Com. Ins. Co., 11 Id. 9): As “port risk” does not designate any of these in particular," if we reject wholly the printéd enumeration of perils, the policy would be without any specification of perils insured against. To uphold all the parts of the contract, as far as can be, it is only necessary to read the whole of the policy, as limited by the written part “ port risk in port of Hew York.” Whenever the words, “this present voyage,” “take upon itself in this voyage,” &c., &c., occur, the word “voyage’* should be deemed a “falsa demonstration not annulling entirely that part of the contract where it is, but,, in fact, intended to designate the time and the circumstances embraced in the written part. Whatever is peculiar to a voyage, or particularly to be applied to a voyage, is to be disregarded. Ho voyage is described. Therefore it must also be said that the policy does not contemplate taking a risk upon any part of a voyage to be made by the ship unless it is included in the written part. This I believe to be a correct application of the cases in this state on this point (Grousset v. Sea Insurance Company, 24 Wend. 206 ; Leeds v. Mechanics’ Insurance Co., 8 N. Y. 356 ; Frichette v. State Mutual Fire, &c., Ins. Co., 3 Bosworth, 190). The loss to the ship came from a peril insured against, so far as it was in its character a sea risk, i.e., in the tide sweeping it against the rock. We can not, however, decide that the dismissal of the complaint should be sustained on the ground, that the peril referred to was not extraordinary. This, if *421 averred as a defense in the answer, was not alluded to upon the dismissal of the complaint. I am of opinion that the principle which apply to general insurance in voyage policies, viz., that the implied warranties call for the insured preserving himself against the ordinary action of the winds and sea, applies to such a policy as this, keeping, however, in view its subject-matter ; and that a loss from the ordinary action of the tide is not to be borne by the defendant. But the plaintiff should have been apprised of the particular defense, as he might have given evidence that the tide or the risk was extraordinary.
We have said that “port risk” is not the designation of the intrinsic character of any peril likely to cause damage. To be sure, it is not impossible that a port might have a risk so peculiar to itself that such a risk would be so described among insurers and merchants. There could be no objection to giving oral proof of what this risk was, and to show that the words were used to designate it. There is no claim, however, by the defense that “port risk” was used in this way. The word port.as here used refers to the extrinsic relations of the risk as existing while the ship is in port, not simply, however, as within the territorial lines of the port, but as using the port for the purposes of a port, up to the time when the voyage should begin, and to the time when the port is used to begin the voyage therein. The apparent object of the clause-is to state, by the use of a “ generalissimum nomen” viz., risk, what the insurers will bear the consequences' of, and to exclude what risks they will not bear. The-distinction, as the learned counsel for the respondent urged, includes “port risk” as different from “voyage risk,” which is excluded. Such distinctions are-usual in marine insurances. In time-policies there is-often a provision that if at the end of the time the vessel is at sea, the insurance shall continue, &c. It *422 is held in such cases, that if before the time expires, the vessel rs ready for sea, quits her mooring, and endeavors to get out to sea, but is kept back by stress of weather, and comes to anchor, and after that suffers from a sea-peril, she, within the contract, is at sea, although, in fact, she is in a port or in a canal leading to the sea. Her being in the port is but an incident unavoidable on her part to her sea voyage (Bowen v. Hope Ins. Co., and The Same v. Merchants’ Ins. Co., 20 Pick. 275, as cited in note 3 to p. 55, 2 Parsons Mar. Ins. ; Union Ins. Co. v. Tyson, 3 Hill, 119; American Ins. Co. v. Hutton, 24 W. 330, aff’d 1 Hill, 321).
In this particular case the words “port risk” are connected with the words “in port of Hew York,” and the main question is, when did the risk taken, end. The cases frequently determine when a risk ends, by considering when another begins, although the latter is not expressed in the policy, or vice versa. It is upon the natural supposition that risks are classified and ■ words appropriate to the classes are used. When words used for one class appear in a policy, the risks indicated • thereby are exclusive of the risks indicated by other words which have been generally employed.
A ship was insured “at and from,” and warranted to sail, by a certain day. She did not sail until a later time. The question was, whether the premium paid could be recovered back, on the ground that no risk had ever attached under the policy. The court held, that there was a class of risks, indicated by the word “at” when the vessel was in port, distinct from the risk attached to the voyage, indicated by the word “from,” and that although the breach of warranty prevented the attaching of the latter, there was an insurance while the vessel was in port, before the voyage (Hendricks v. Commercial Ins. Co., 8 John. 1.)
*423 The words “at and from Hew Orleans, Campeach, and Havana,” although they may imply that the vessel may go from one to the other, as commencing a course of trade, do not imply that the vessel shall go “to” any of the ports as prescribing the end of the voyage (Grousset v. Sea Ins. Co., 24 W. 207).
The words describing a voyage as “to” a port, continues the voyage beyond the territorial line of the port until the vessel is moored in the port; yet the word “to” implies literally no more than up to the port, and no further,and on the other hand, a “voyage from” a port includes that part of the voyage which, at its beginning, is in the port.
In the same way the words in the present policy are intended to exclude risks which would be taken upon a voyage “from ” the port of Hew York. I therefore am of opinion, that as matter of law the court might hold that the commencement of a voyage terminated the risk under the policy.
On the other hand, I think the defendant was at liberty, if the court chose to allow it, to examine experienced underwriters or merchants to show how the-word was used in the business of insurance, or rather what it meant, solely, however, upon the ground, that it is evidently a word formed for business and technical purposes. It is a composite word, which gets its form in a manner unusual in the formation of words in general. If it could be done, there was no objection to show that “voyage risk” and “port risk” were used distinctively. I think the court was bound to see that such was the use of the words “ port risk ” in the policy, and therefore in a sense it was unnecessary to examine witnesses; yet I think the testimony would be an assistance to the court in coming to a conclusion. I do not, however, think that the meaning of the words could have been left to the jury, inasmuch as the *424 policy taken together fixed the meaning of the clause.
In so far as the witnesses, in endeavoring to define the term, gave a statement of the legal effect of the contract, or an opinion as to the time when the risk ended, the testimony was incompetent. The value of the testimony was exhausted when it had given the use and meaning of the words.
I am of opinion that the judgment should be affirmed with costs.
Curtis, J., concurred.